# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALL PARTY PARLIAMENTARY GROUP ON
EXTRAORDINARY RENDITION,
c/o Office of Andrew Tyrie MP
House of Commons
London, UK SW1A 0AA;

ANDREW TYRIE MP,
191 Shakespeare Tower, Barbican
London, UK EC2Y 8DR; and

JOE CYR,                                                        CIVIL ACTION NO.
59 Argyle Avenue
Babylon, NY 11702;

                              Plaintiffs,

                    - v. -

U.S. DEPARTMENT OF DEFENSE,
1000 Defense Pentagon
Washington, DC 20301-1000;

U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

U.S. DEPARTMENT OF STATE,
2201 C Street, NW
Washington, DC 20520;

U.S. CENTRAL INTELLIGENCE AGENCY,
Washington, DC 20505; and

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Drive, SW
Washington, DC 20528;
                              Defendants.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF

## PRELIMINARY STATEMENT

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., for injunctive, declaratory, and other appropriate relief, and seeking the immediate processing and release of agency records requested by Plaintiffs from Defendants Department of Defense ("DoD"), Department of Justice ("DoJ"), Department of State ("DoS"), Central Intelligence Agency ("CIA"), Department of Homeland Security ("DHS"), and their respective components (collectively, "Defendants").

2.      In November 2008, Plaintiffs the All Party Parliamentary Group on Extraordinary Rendition (the "APPG"), Andrew Tyrie MP, and Joe Cyr (collectively, "Plaintiffs") submitted FOIA requests ("Plaintiffs' Requests") to Defendants seeking agency records concerning the United States' extraordinary rendition, secret detention, and coercive interrogation of individuals suspected of being terrorists or having ties to terrorists, and the circumstances and extent of participation in these activities by the United Kingdom (the "UK") and other governments.

3.      Plaintiffs' Requests also seek records containing information about the transfer of detainees from the control of the UK and other governments to the control of the United States, and information about specific detainees, their detentions, interrogation techniques used against them, and information obtained as a result of these interrogation practices.

4.      Plaintiffs submitted nearly identical FOIA requests to each Defendant on November 17, 2008. Copies of the requests submitted to the DoD, DoJ, DoS, CIA, and DHS are attached as Exhibits A-E, respectively.

5.      Although the United States Government has officially acknowledged the existence of its extraordinary rendition, secret detention, and coercive interrogation programs, and despite widespread reporting on these practices by the media and others, Defendants have

2

delayed the processing of Plaintiffs' Requests and have refused to release responsive records and information.

6.  Upon information and belief, certain Defendants have, in some instances, failed to conduct adequate searches for responsive records.

7.  For example, DoS has not responded to Plaintiffs' Requests in any way (even though it has been over a year since Plaintiffs filed their requests).

8.  Other Defendants have responded inadequately. The CIA and the DHS's Office of Intelligence and Analysis have refused to respond to Plaintiffs' Requests on the alleged ground that a provision of the FOIA prohibits them from responding to requests submitted by a "foreign government entity or representative thereof." However, as explained herein, and as has been made clear to the CIA and DHS's Office of Intelligence and Analysis, Plaintiffs are not representatives of foreign government entities.

9.  There is a compelling public interest in favor of disclosure of the requested records concerning the United States' extraordinary rendition, secret detention, and coercive interrogation programs, the extent of participation in these programs by the UK and other governments, and the transfer of detainees from the UK and other governments to the control of the United States or its agents.

10.  Although some details of the United States Government's treatment of detainees, and the UK's involvement in such treatment, are known, much of what occurred remains secret, documented only in thousands of pages of United States Government records yet to be subjected to public scrutiny.

11.  The release of these records is of critical importance now, as both the United States and the UK Governments are engaged in profound debates about the legality of their past

and current treatment of detainees.

12.     Over the past few years, there has been a public outcry for the release of these kinds of records, and significant media attention has been given to the release of similar records in FOIA lawsuits commenced by the American Civil Liberties Union, Amnesty International, and other public interest groups.

13.     President Barack Obama's election in 2008 marked a clear break with the former administration's secret detention, extraordinary rendition, and interrogation program.  On January 21, 2009, President Obama renewed the United States Government's commitment to transparency through the FOIA.  In the President's words, FOIA "is the most prominent expression of a profound national commitment to ensuring an open Government."  74 Fed. Reg. 4683.  On his third day in office President Obama issued an Executive Order ending the CIA's secret detention program and rescinding the CIA's authority to use so-called "enhanced interrogation techniques."

14.     To vindicate the public's right to information about government practices and policies, Plaintiffs seek declaratory and injunctive relief ordering Defendants to immediately process Plaintiffs' Requests and to release records and information that have been, and continue to be, unlawfully withheld.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552(a)(4)(B) & 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & 5 U.S.C. §§ 701-706.

16.     Venue properly lies in this district pursuant to 5 U.S.C. § 552(a)(4)(A) & (B).

\\\DC - 090334/000919 - 3004732 v1

## PARTIES

17.     Plaintiff APPG is a non-governmental cross-party group of over 60 Members of Parliament and Peers from the Parliament of the UK who joined together in December 2005 to collect, examine, and publicly disseminate information on the topic of the United States Government's extraordinary rendition, secret detention, and coercive interrogation programs and the circumstances and extent of the UK's involvement and/or cooperation in these programs.

18.     Since its inception, the APPG has worked to clarify and publicize the legal obligations owed by the UK in relation to extraordinary rendition and to detainees captured by UK forces in Iraq, Afghanistan, and elsewhere.

19.     The APPG has also sought to obtain information to verify and monitor the UK's compliance with its legal obligations, especially under the Convention against Torture, the European Convention on Human Rights, and the UK Human Rights Act of 1998.

20.     Plaintiff APPG seeks to determine whether the UK has assisted in the extraordinary rendition, secret detention, or coercive interrogation of detainees (particularly detainees who are British nationals or residents), and whether UK territory has been used to facilitate such practices in any way, including by allowing the over-flight or refueling of planes through or on UK territory or airspace, or by allowing UK territory to be used to hold detainees.

21.     The APPG also seeks to determine whether UK forces handed suspected terrorists over to the United States, Afghanistan, Iraq, or other countries in the absence of proper legal safeguards and assurances against extraordinary rendition, torture, or other mistreatment.

22.     The APPG has commissioned and published legal opinions on many aspects of the practices of extraordinary rendition and secret detention.

23.     The APPG publishes on its publicly available Website almost all of the

information that it obtains.  The APPG Website address is

http://www.extraordinaryrendition.org.

24.     The APPG is not a part or representative of the UK Government, and it does not

carry out any functions of or have any responsibilities to the UK Government.

25.     The APPG has no official status within Parliament.

26.     The APPG does not receive any government funding.

27.     To carry out its activities, the APPG relies on contributions from private trusts,

private foundations, nongovernmental organizations, and private individuals.

28.     Mr. Tyrie is a Conservative Party Member of the Parliament of the UK and the

Chairman of the APPG. Mr. Tyrie is a UK citizen.

29.     Mr. Tyrie is not a representative of the UK Government.

30.     Mr. Cyr is a United States citizen who resides and works in the State of New

York. Mr. Cyr is an attorney and a partner in the international law firm Lovells LLP. He heads

Lovells LLP's litigation and arbitration practice in the United States.

31.     Mr. Cyr joins this request in his individual capacity and not as a representative of

the APPG, Mr. Tyrie, or the UK Government.

32.     Defendant DoD is a Department of the Executive Branch of the United States

Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Departments of

the Army, Navy, Air Force, and Marine Corps, as well as the Defense Intelligence Agency,

Defense Security Service, Office of the Inspector General, National Guard Bureau, National

Reconnaissance Office, National Security Agency, and various Combatant Commands including

the U.S. Joint Forces Command, U.S. European Command (HQ USEUCOM), U.S. Southern

Command, U.S. Pacific Command, U.S. Special Operations Command, U.S. Central Command,

U.S. Northern Command, U.S. Transportation Command, and U.S. Strategic Command, are all components of the DoD.

33.     Defendant DoJ is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Civil Division, Criminal Division, Federal Bureau of Investigation, INTERPOL-U.S. National Central Bureau, National Security Division, Office of the Inspector General, Office of Legal Counsel, Office of the Solicitor General, Office of International Affairs, and Office of Information and Privacy are components of DoJ.

34.     Defendant DoS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

35.     Defendant CIA is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

36.     Defendant DHS is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). United States Immigration and Customs Enforcement, United States Citizenship and Immigration Services, Office for Civil Rights and Civil Liberties, Office of the Inspector General, Directorate for National Protection and Programs, Office of the General Counsel, Office of Operations Coordination, United States Customs and Border Protection, United States Coast Guard, Office of Intelligence and Analysis, Directorate for Policy, and Privacy Office are components of DHS.


## FACTS

## I.     THE UNITED STATES GOVERNMENT'S EXTRAORDINARY RENDITION, SECRET DETENTION, AND COERCIVE INTERROGATION PROGRAMS

37.     Since September 2001, the United States has engaged in the extraordinary

7

rendition, secret detention, and coercive interrogation of individuals in connection with its efforts to prevent terrorist attacks against the United States and its interests.

38.     The secret detention program was reportedly authorized by President George W. Bush in a Presidential Directive or Finding signed on or about September 17, 2001.

39.     The United States Government has acknowledged the existence of the extraordinary rendition, secret detention, and coercive interrogation programs, including in statements made by former President George W. Bush, former Secretary of State Condoleezza Rice, and former Director of the CIA, Michael Hayden.

40.     Extraordinary renditions, secret detentions, and coercive interrogations carried out by the United States and its agents have involved the worldwide apprehension, transfer, and detention, by the United States and its allies, of suspected terrorists or individuals suspected of having ties to terrorists.

41.     Following their apprehension, detainees reportedly, among other things, have been immobilized, hooded, drugged, and then transferred to foreign destinations known for mistreating prisoners (such as Morocco, Syria, Jordan, and Egypt) or United States facilities (including secret facilities sometimes referred to as "black sites") for detention and interrogation.

42.     The transfer and detention of these individuals also have reportedly involved the use of severe interrogation techniques including waterboarding, sleep deprivation, prolonged solitary confinement, stress positions, and sensory manipulation. Foreign states reportedly have subjected rendered detainees to torture, beatings, and other abuse, even in cases in which the United States reportedly sought special assurances from foreign states that they would not mistreat detainees.

43.     Nongovernmental organizations, legal scholars, and media organizations have

8

reported extensively on and examined these practices and developments.

44.     Upon information and belief, all Defendants have been involved in, or are privy to records and information about, instances of extraordinary rendition, secret detention, and coercive interrogation.

45.     On January 22, 2009, President Barak Obama ended the CIA's secret detention program and rescinded the CIA's authority to use so-called "enhanced interrogation techniques"—including walling and waterboarding—against individuals.  He also required that all future CIA interrogations rely only on procedures authorized by the publicly available Army Field Manual.


II.     **UK PARTICIPATION IN THE UNITED STATES GOVERNMENT'S EXTRAORDINARY RENDITION, SECRET DETENTION, AND COERCIVE INTERROGATION PROGRAMS**

46.     For several years, the media, elements of the UK Government, and the APPG, among others, have been investigating whether UK officials or agents have had any knowledge of, or involvement in, the United States' extraordinary rendition, secret detention, and coercive interrogation programs.

47.     In February 2008, the UK's Foreign Secretary, David Miliband, announced that he had received information from the United States Government contravening earlier assurances given by the United States that the UK territory of Diego Garcia had not been, and would not be, used for extraordinary renditions. Contrary to these assurances, investigations revealed at least two occasions when this had in fact occurred.

48.     Also in February 2008, Ben Griffin, a former member of a UK Special Forces unit who had served in Iraq, issued a statement alleging that UK Special Forces had turned over detainees to face mistreatment at the hands of the United States and sought to avoid their legal

responsibilities to the detainees through a practice of detention without arrest.

49.     In February 2009, the UK's then Defense Secretary, John Hutton, announced that contrary to earlier assurances two detainees captured by UK Forces in Iraq and transferred to US detention had been transported from Iraq to Afghanistan.


## III.   PLAINTIFFS' FOIA REQUESTS

50.     On November 17, 2008, Plaintiffs filed their FOIA Requests with Defendants DoS, CIA, DoD, DoJ, and DHS. Plaintiffs also filed copies of their Requests with many individual components within the Defendant agencies.

51.     Plaintiffs' Requests seek records relating to seven aspects of the extraordinary rendition, secret detention, and coercive interrogation of suspected terrorists and the involvement and cooperation of the UK and other governments in such activities:

A.     Agreements between the United States and the UK for transferring, rendering, holding, or turning over detainees or using UK territory for purposes of extraordinary rendition, secret detention, or coercive interrogation;

B.     Agreements between the United States and other governments for transferring, rendering, holding, or turning over detainees or using the territory of another government for purposes of extraordinary rendition, secret detention, or coercive interrogation;

C.     UK participation and support of the United States' extraordinary rendition, secret detention, and coercive interrogation programs;

D.     The use of the British Indian Ocean Territory and, more specifically, the island of Diego Garcia, in connection with the United States' extraordinary rendition, secret detention, and coercive interrogation programs;

E.     Other governments' participation and support of the United States' extraordinary rendition, secret detention, and coercive interrogation programs;

F.     The identity, location, and treatment of specific detainees; and

10

G.     The source of information about specific alleged terrorist plots.

52.     Plaintiffs sought expedited processing and waiver of applicable fees pursuant to the statute.

## IV.     DEFENDANTS' REFUSALS AND FAILURES TO RESPOND TO PLAINTIFFS' REQUESTS

### Department of State

53.     The DoS has not responded in any way to Plaintiffs' Requests. This failure to respond may be treated as a constructive exhaustion of Plaintiffs' administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Central Intelligence Agency

54.     On December 12, 2008, the CIA sent a letter to Plaintiffs announcing its refusal to process Plaintiffs' Requests on the alleged basis that 5 U.S.C. § 552(a)(3)(E) prohibits it from responding to requests submitted by a "foreign governmental entity or representative thereof." Plaintiffs administratively appealed this determination on February 4, 2009, but this appeal was denied on April 2, 2009 "based on the fact that the requesters are members of or represent a foreign government."

55.     Section 552(a)(3)(E) states in relevant part: "An agency, or part of an agency, that is an element of the intelligence community ... shall not make any record available ... to -- (i) any government entity, other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof; or (ii) a representative of a government entity described in clause (i)."

56.     The CIA has erroneously taken the position that Plaintiffs are representatives of a foreign government for purposes of the prohibition set out in 5 U.S.C. § 552(a)(3)(E), despite the fact that Plaintiffs are not -- and should not be considered to be -- representatives of a foreign

\\\DC - 090334/000919 - 3004732 v1

government.

57.     Although the APPG is composed of Members of Parliament and Peers from the Parliament of the UK, the APPG is not a part or representative of the UK Government.

58.     Likewise, although Mr. Tyrie is a Conservative Party Member of the Parliament of the UK, he is not a part or representative of the UK Government.

59.     Mr. Cyr has submitted the request in his individual capacity and is not a representative of a foreign government.

**Department of Defense**

60.     To date, neither the DoD nor any components of the DoD have disclosed any records in response to Plaintiffs' Requests.

61.     On November 26, 2008, the DoD sent a letter to Plaintiffs confirming receipt of Plaintiffs' Requests, offering to conduct a two-hour search for records, and offering to provide the results of a search for records being conducted in response to a similar FOIA request that was filed by *The New York Times*.

62.     On December 9, 2008, Plaintiffs responded by letter to the DoD and requested that the DoD proceed with the two-hour search for records and provide a copy of the results of the FOIA search being conducted for *The New York Times*.

63.     The DoD has not responded to Plaintiffs' letter of December 9, 2008.

64.     On December 12, 2008, the National Security Agency, a component of the DoD, determined that Plaintiffs' Requests seek information that is classified and refused to search for responsive records.

65.     Plaintiffs administratively appealed the National Security Agency's determination on February 4, 2009, but this appeal was denied on June 25, 2009.

12

66.     On June 30, 2009 and September 10, 2009, Plaintiffs wrote additional letters to the DoD asking about the status of the DoD's response to Plaintiffs' Requests.

67.     On September 15, 2009, the DoD wrote to Plaintiffs, stating that it was still working to provide Plaintiffs with a status update on the processing of their Requests.

68.     Plaintiffs have not yet received release determinations from the DoD or many of its components, including the Department of the Army, Department of the Navy, Department of the Air Force, Marine Corps, Defense Intelligence Agency, Defense Security Service, Office of the Inspector General, National Guard Bureau, National Reconnaissance Office, U.S. Joint Forces Command, U.S. European Command (HQ USEUCOM), U.S. Southern Command, U.S. Pacific Command, U.S. Special Operations Command, U.S. Central Command, U.S. Northern Command, U.S. Transportation Command, and U.S. Strategic Command.

**Department of Justice**

69.     On January 16, 2009, the Federal Bureau of Investigation ("FBI"), a DoJ component, released to Plaintiffs 1,177 pages of heavily redacted records. The FBI referred to these records as "pre-processed" -- they had been previously released in response to FOIA requests filed by third parties.

70.     On March 16, 2009, Plaintiffs administratively appealed the FBI's January 16, 2009 release determination. On September 30, 2009, the DoJ denied this administrative appeal.

71.     On August 28, 2009, the FBI released an additional 459 pages of heavily redacted documents and indicated that it was withholding more than 600 additional pages of responsive documents in their entirety based on FOIA Exemptions 1, 2, 6 and 7(A), (C), (D), and (E). On October 23, 2009, Plaintiffs administratively appealed this determination.

72.     On December 9, 2008, INTERPOL-U.S. National Central Bureau ("USNCB"), a

DoJ component, announced that it was withholding 22 responsive records under the "law enforcement" exemption to the FOIA. On December 17, 2008, the USNCB reported that it was withholding an additional 3 responsive records based on FOIA Exemption 7(D). On March 5, 2009, the USNCB released 4 pages of redacted records and withheld another 7 pages, again based on FOIA Exemption 7(D).

73.     In letters dated February 4, 2009 and April 24, 2009, Plaintiffs administratively appealed all of the USNCB's adverse determinations. On August 20, 2009, the USNCB denied all of Plaintiffs' administrative appeals.

74.     On September 10, 2009, the DoJ Office of Information Policy released a three-page document that had been referred to it by the Department of Homeland Security.

75.     On June 30, 2009 and September 10, 2009, Plaintiffs wrote additional letters to the DoJ inquiring about the status of the DoJ's responses to Plaintiffs' Requests.

76.     On October 20, 2009, the DoJ Office of Information Policy claimed that the Office of the Solicitor General had no record of Plaintiffs' Request and forwarded the Request to the Office of the Solicitor General.

77.     On November 30, 2009, the DoJ Criminal Division claimed that it had no records responsive to Plaintiffs' Requests.

78.     The following DoJ components have failed, to date, to issue release determinations in response to Plaintiffs' requests or to decide administrative appeals taken by Plaintiffs: Civil Division, FBI, National Security Division, Office of the Inspector General, Office of Legal Counsel, Office of the Solicitor General, and Office of International Affairs.

**Department of Homeland Security**

79.     To date, the DHS and its components have disclosed only a small number of

14

pages of records in response to Plaintiffs' Requests.

80.     In a letter dated January 29, 2009, the DHS's Office of Operations Coordination produced a partial release of a single, one-page record, and the DHS's Office of Intelligence and Analysis ("OIA") refused -- like the CIA -- to process Plaintiffs' Requests on the basis of the "foreign government" exception at 5 U.S.C. § 552(a)(3)(E). As explained herein, however, this exception is inapplicable. None of the Plaintiffs are -- or should be considered to be -- representatives of a foreign government. Plaintiffs' administratively appealed this determination on March 27, 2009.

81.     On March 20, 2009, U.S. Immigration and Customs Enforcement, a DHS component, also released a single-page record and noted that it was withholding six pages of responsive records based on FOIA Exemptions 2, 6, and 7(C). Plaintiffs' administratively appealed this determination on May 18, 2009.

82.     On June 18, 2009, the Office of the Inspector General, another DHS component, issued an interim determination and released approximately 167 pages of records in full and 62 pages of heavily redacted records. The Office of the Inspector General stated it was withholding 990 pages of responsive records based on FOIA Exemptions 1, 2, 5, 6, and 7(C). Plaintiffs administratively appealed this determination on August 13, 2009.

83.     On September 16, 2009, the Office of the Inspector General released an additional 26 pages of heavily redacted records and withheld four pages of responsive records based on FOIA Exemptions 5, 6, and 7(C). Plaintiffs administratively appealed this determination on November 11, 2009.

84.     On June 30, 2009 and again on September 10, 2009, Plaintiffs wrote to the DHS seeking an update on the status of the processing of Plaintiffs' Requests and administrative

appeals dated March 27, May 18, and August 13, 2009. To date, the DHS has not responded to Plaintiffs' letters.

85.     Plaintiffs have not received final release determinations from the DHS or many of its components, including U.S. Citizenship and Immigration Services, Office for Civil Rights and Civil Liberties, U.S. Coast Guard, U.S. Customs and Border Protection, Directorate for National Protection and Programs, Office of the General Counsel, Office of Operations Coordination, and Office of Policy.

86.     Plaintiffs also have not received determinations of administrative appeals filed by Plaintiffs with the DHS and several of its components, including U.S. Immigration and Customs Enforcement, Office of the Inspector General, and Office of Intelligence and Analysis.


## V.    THE UNITED STATES GOVERNMENT'S RENEWED COMMITMENT TO FOIA

87.     On January 21, 2009, President Obama issued a Presidential Memorandum for the Heads of Executive Departments and Agencies addressing the FOIA.

88.     Recognizing that the FOIA "is the most prominent expression of a profound national commitment to ensuring an open Government[,]" the Presidential Memorandum stated that all "agencies should adopt a presumption in favor of disclosure . . . [in] all decisions involving FOIA."  74 Fed. Reg. 4683.

89.     It also states that "[t]he Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."  74 Fed. Reg. 4683.

\\\DC - 090334/000919 - 3004732 v1

## VI.    PLAINTIFFS' EXHAUSTION OF ADMINISTRATIVE REMEDIES

90.    Since filing the Requests, Plaintiffs have spent significant time and effort attempting to obtain responsive records and information from Defendants without resorting to litigation.

91.    These efforts have included written correspondence and numerous telephone calls with Defendants and their components, as well as filing administrative appeals with agencies and components that determined they would not disclose records and information responsive to Plaintiffs' Requests.

92.    In Plaintiffs' Requests and in these follow-up communications and appeals, Plaintiffs identified responsive records and information that each Defendant likely possesses.

93.    Plaintiffs' efforts, however, have been to no avail.

94.    In total, Plaintiffs have received less than 2,000 pages of heavily redacted records from all of the Defendants combined.

95.    Defendants have stated in correspondence that they are withholding large quantities of records and information that are responsive to Plaintiffs' Requests.

96.    Although Plaintiffs filed their Requests over a year ago, they are still waiting for final release determinations from numerous Defendants and their components, as well as decisions on a number of administrative appeals filed by Plaintiffs.

97.    Certain Defendants and their components have also denied Plaintiffs' requests for expedited processing and fee waivers.

\\\DC - 090334/000919 - 3004732 v1

## VII.   PLAINTIFFS' ENTITLEMENT TO EXPEDITED PROCESSING

98.     Under the FOIA and corresponding regulations Plaintiffs are entitled to expedited processing.

99.     The FOIA provides that each agency shall provide for expedited processing of FOIA requests when the requester demonstrates "a compelling need" for the information.  5 U.S.C. §  552(a)(6)(E)(i)(I).

100.    Under the FOIA a "compelling need" exists when the records at issue are needed by an organization "primarily engaged in disseminating information" in order to "inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v)(II).

101.    The APPG is primarily engaged in disseminating information to the public.

102.    The APPG works to clarify and publicize the legal obligations owed by the UK in relation to extraordinary rendition and to detainees captured by UK forces in Iraq, Afghanistan, and elsewhere.

103.    Plaintiffs' FOIA requests satisfy the urgency component of the statute because timely public dissemination is highly important to the on-going public and governmental review of the United States' rendition and detention policies and the UK's involvement therein.

104.    The APPG will disseminate any information obtained through these Requests to the public at no cost.

## VIII.  PLAINTIFFS' ENTITLEMENT TO A WAIVER OR LIMITATION OF PROCESSING FEES

105.    Under the FOIA and corresponding regulations Plaintiffs are entitled to a waiver or limitation of fees for document search, review, and duplication because disclosure is "likely to

contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

106.    Given the ongoing media attention to these issues, the records sought by plaintiffs will significantly contribute to the public understanding of the operations and activities of the government.

107.    Plaintiffs do not seek the requested information for commercial reasons.  All information disclosed as a result of these Requests will be made available to the public at no cost.

## CAUSES OF ACTION

### First Cause of Action
**(By Plaintiff APPG Against Defendants CIA and OIA):**
**Declaration that the APPG Is Not a Representative of a**
**Foreign Government Within the Meaning of 5 U.S.C. § 552(a)(3)(E)**

108.    Plaintiffs repeat and reallege Paragraphs 1 to 107.

109.    Plaintiff APPG seeks a declaration that it is not a representative of a foreign government within the meaning of 5 U.S.C. § 552(a)(3)(E).

### Second Cause of Action
**(By Plaintiff Andrew Tyrie Against Defendants CIA and OIA):**
**Declaration that Andrew Tyrie Is Not a Representative of a**
**Foreign Government Within the Meaning of 5 U.S.C. § 552(a)(3)(E)**

110.    Plaintiffs repeat and reallege Paragraphs 1 to 109.

111.    Plaintiff Mr. Tyrie seeks a declaration that he is not a representative of a foreign government within the meaning of 5 U.S.C. § 552(a)(3)(E).

\\\DC - 090334/000919 - 3004732 v1

**Third Cause of Action**
**(By Plaintiff Mr. Cyr Against Defendants CIA and OIA):**
**Declaration that Joe Cyr Is Not a Representative of a**
**Foreign Government Within the Meaning of 5 U.S.C. § 552(a)(3)(E)**

112.    Plaintiffs repeat and reallege Paragraphs 1-111.

113.    Plaintiff Mr. Cyr seeks a declaration that he is not a representative of a foreign

government within the meaning of 5 U.S.C. § 552(a)(3)(E).

**Fourth Cause of Action**
**(By All Plaintiffs Against DoD, DoS, CIA, and DHS):**
**Violation of FOIA for Failure to Expedite the Processing of Plaintiffs' Requests**

114.    Plaintiffs repeat and reallege Paragraphs 1-113.

115.    Defendants' failure to expedite the processing of Plaintiffs' Requests violates the

FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and Defendants' own regulations promulgated thereunder.

**Fifth Cause of Action**
**(By All Plaintiffs Against All Defendants):**
**Violation of FOIA for Failure to Allow Fee Waiver**

116.    Plaintiffs repeat and reallege Paragraphs 1-115.

117.    Defendants' failure to allow the fee waivers sought by Plaintiffs violates the

FOIA, 5 U.S.C. § 552(a)(4)(A)(iii).

**Sixth Cause of Action**
**(By All Plaintiffs Against All Defendants):**
**Violation of FOIA for Failure to Timely Respond to Plaintiffs' Requests**

118.    Plaintiffs repeat and reallege Paragraphs 1-117.

119.    Defendants' failure to timely respond to Plaintiffs' Requests violates FOIA, 5

U.S.C. § 552(a)(6)(A)(i), and Defendants' own regulations promulgated thereunder.

**Seventh Cause of Action**
**(By All Plaintiffs Against All Defendants):**
**Violation of FOIA for Failure to Make the Records Sought Promptly Available**

120.    Plaintiffs repeat and reallege Paragraphs 1-119.

121.    Plaintiffs are informed and believe, and therefore allege, that the requested records are in the possession of the Defendants and came into their possession in the course of their official duties.

122.    Defendants' failure to make the records sought by Plaintiffs promptly available violates FOIA, 5 U.S.C. § 552(a)(3)(A).

**Eighth Cause of Action**
**(By All Plaintiffs Against All Defendants):**
**Violation of FOIA for Failure to Release Records Sought by Plaintiffs' Requests**

123.    Plaintiffs repeat and reallege Paragraphs 1-122.

124.    Plaintiffs are informed and believe, and therefore allege, that the requested information is in the possession of the Defendants and came into their possession in the course of their official duties.

125.    Defendants' improper withholding of agency records and failure to release records sought by Plaintiffs' Requests violates the FOIA, 5 U.S.C. § 552(a)(1)-(3).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that this Court:

(a)    DECLARE that Plaintiff APPG is not a representative of a foreign government within the meaning of 5 U.S.C. § 552(a)(3)(E);

(b)    DECLARE that Plaintiff Mr. Tyrie is not a representative of a foreign government within the meaning of 5 U.S.C. § 552(a)(3)(E);

(c)    DECLARE that Plaintiff Mr. Cyr is not a representative of a foreign government within the meaning of 5 U.S.C. § 552(a)(3)(E);

(d)    ORDER Defendants immediately and expeditiously to process Plaintiffs' FOIA Requests and release the requested records;

21

(e)     ENJOIN Defendants from charging Plaintiffs search, review, or duplication fees

        for the processing of Plaintiffs' Requests;

(f)     EXPEDITE this proceeding as provided for in 28 U.S.C. § 1657;

(g)     SET a schedule for releasing the requested records to Plaintiffs;

(h)     AWARD Plaintiffs their costs and reasonable attorneys fees incurred in this

        action; and

(i)     GRANT Plaintiffs such other and further relief as the Court may deem just and

        proper.

Dated:  December 16, 2009

                                        Respectfully submitted,


                                        _____/s/ Audrey E. Moog_____
                                        Jonathan L. Abram (D.C. Bar No. 389896)
                                        Audrey E. Moog (D.C. Bar No. 468600)
                                        HOGAN & HARTSON LLP
                                        555 Thirteenth Street, NW
                                        Washington, DC 20004
                                        Phone: (202) 637-5600
                                        Fax: (202) 637-5910


                                        Joe Cyr
                                        Derek J. Craig
                                        Carolyn E. Kruk
                                        LOVELLS LLP
                                        590 Madison Avenue
                                        New York, NY  10022
                                        Phone:  (212) 909-0600
                                        Fax:  (212) 909-0660


                                        *Attorneys for Plaintiffs All Party
                                        Parliamentary Group on   Extraordinary
                                        Rendition, Andrew Tyrie MP, and Joe Cyr*