**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ALL PARTY PARLIAMENTARY | : | | |
| GROUP ON EXTRAORDINARY | : | | |
| RENDITION *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-2375 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 16 |
| | : | | |
| UNITED STATES DEPARTMENT | : | | |
| OF DEFENSE *et al*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

Gʀᴀɴᴛɪɴɢ ᴛʜᴇ Dᴇꜰᴇɴᴅᴀɴᴛs' Pᴀʀᴛɪᴀʟ Mᴏᴛɪᴏɴ ᴛᴏ Dɪsᴍɪss; Dᴇɴʏɪɴɢ ᴛʜᴇ Pʟᴀɪɴᴛɪꜰꜰs'
Mᴏᴛɪᴏɴ ꜰᴏʀ Pᴀʀᴛɪᴀʟ Sᴜᴍᴍᴀʀʏ Jᴜᴅɢᴍᴇɴᴛ

**I.  INTRODUCTION**

This matter comes before the court on the defendants' partial motion to dismiss and the plaintiffs' motion for partial summary judgment.  The plaintiffs consist of an elected member of the U.K. Parliament, a parliamentary group and an American attorney.  Pursuant to the Freedom of Information Act, ("FOIA"), the plaintiffs requested material from various government agencies regarding the U.S. government's "extraordinary rendition" program.  Several agencies refused, citing a provision of FOIA that exempts members of the intelligence community from disclosing matters to foreign government entities.  The plaintiffs subsequently filed suit, alleging that this exception does not apply because the plaintiffs are not foreign government entities or representatives thereof.  Because the court concludes that the plaintiffs are representatives or subdivisions of a foreign government entity, the court grants the defendants' motion and denies the plaintiffs' motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Andrew Tyrie is an elected Member of the U.K. Parliament.  Defs.' Partial Mot. to Dismiss ("Defs.' Mot.") at 3.  He chairs a group called the All Party Parliamentary Group on Extraordinary Rendition (the "APPG").  *Id.*  The APPG is a group of over 50 Members of Parliament that was established for the purpose of examining and obtaining the disclosure of information about the United States' "extraordinary rendition" program and the U.K. government's participation therein.  Pls.' Mot. at 23.  The plaintiffs allege that the "extraordinary rendition" program allowed the CIA to extrajudicially apprehend foreign nationals suspected of involvement in terrorist activities and transfer them to foreign countries for detention and coercive interrogation.  *See* Pls.' Mot. at 3-4; *see also Vance v. Rumsfeld*, 653 F.3d 591, 592 (2011) (describing "extraordinary rendition" policy); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (same); *Arar v. Ashcroft*, 585 F.3d 559, 564 n.1 (2d Cir. 2009) (same).

Both Andrew Tyrie and the APPG are represented on a *pro bono* basis by Joe Cyr, a United States citizen and an attorney who practices with a law firm in the United States.  Pls.' Mot. at 3-4.  In November 2008, the plaintiffs, through their counsel, submitted FOIA requests for government documents with a number of agencies of the U.S. government, including the Central Intelligence Agency ("CIA"), the Department of Homeland Security ("DHS"), the Department of Justice ("DOJ"), the Department of State, the Department of Defense ("DOD"), the Federal Bureau of Investigation ('FBI"), and the National Security Agency ("NSA") (collectively, "the defendants").  Pls.' Mot. at 6.  The plaintiffs' FOIA requests sought information on 43 separate topics, all of which focused on various aspects of the United States'

and the United Kingdom's involvement in extraordinary rendition, secret detention, coercive interrogation of suspected terrorists and the sources of information about alleged terrorist plots. Defs.' Mot. at 2.  Joe Cyr, along with other attorneys at his law firm, assisted the APPG in drafting these FOIA requests and communicating with the various agencies to obtain the requested documents.  Pls.' Mot. at 6.

The majority of the plaintiffs' FOIA requests were denied.  *Id.*  The FBI initially responded to the request, but later informed the plaintiffs that it would no longer comply on account of 5 U.S.C. § 552(a)(3)(E), an exception to FOIA that prohibits intelligence agencies from granting requests to all non-domestic government entities, their subdivisions and their representatives.  Defs.' Mot. at 3.  The CIA and the DHS's Office of Intelligence and Analysis similarly denied the FOIA requests based on this statutory provision.  *Id.*  The DOD, NSA and Department of State did not respond to the plaintiffs' request for over a year, after which point they too invoked 5 U.S.C. § 552(a)(3)(E).  *Id.*  The plaintiffs administratively appealed the CIA's and the DOD's denials of the requests.  *Id.* at 7-8.  In April 2009, the CIA rejected the plaintiffs' appeal.  *Id.* at 8.  The DOD never acted on the plaintiffs' appeal.  *Id* at 7.

In December 2009, the plaintiffs filed a complaint in this court seeking injunctive, declaratory and other relief under FOIA.  *See generally* Compl.  The defendants subsequently filed a motion to dismiss, alleging that the plaintiffs are representatives or subdivisions of a foreign government entity and are thus prohibited from requesting records under 5 U.S.C. § 552(a)(3)(E).  *See generally* Defs.' Mot.  The plaintiffs then filed a motion for partial summary judgment on the same issue, alleging that 5 U.S.C. § 522(a)(3)(E) does not to apply to them because they are neither foreign government entities nor representatives thereof.  *See generally*

Pls.' Mot.  With these motions now ripe for adjudication, the court turns to the relevant legal standards and the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief").  A claim is facially plausible when

the pleaded factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at

556).

      In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*,

333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded

complaints are conclusory, the court need not accept as true inferences unsupported by facts set

out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of

Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

## B.   The Court Grants the Defendants' Partial Motion to Dismiss and Denies the Plaintiffs' Motion for Partial Summary Judgment

### 1.   FOIA's Statutory Framework and the Foreign Government Entity Exemption

      Enacted "to pierce the veil of administrative secrecy and to open agency action to the

light of public scrutiny," the Freedom of Information Act reflects "a general philosophy of full

agency disclosure unless information is exempted under clearly delineated statutory language."

*Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976).  Prior to 2002, these exemptions to

disclosure turned on the nature of the material, not the identity of the individual or organization

making the request.  *Swan v. Sec. Exch. Comm'n*, 96 F.3d 498, 499 (D.C. Cir. 1996) ("FOIA

does not make distinctions based on who is requesting the information.").  This was in part

because "[o]nce records are released, nothing in FOIA prevents the requester from disclosing the

information to anyone else."  *Id.* at 500.

In 2002, Congress amended FOIA to include 5 U.S.C. § 552(a)(3)(E), which the court

will refer to as the "foreign government entity exemption."  This provision states that no agency

that is a member of the "intelligence community"[1] shall make any record available to "(i) any

government entity, other than a State, territory, commonwealth, or district of the United States,

or any subdivision thereof; or (ii) a representative of a government entity described in clause (i)."

5 U.S.C. § 552(a)(3)(E).

The relevant legislative report accompanying the FOIA's 2002 amendment noted the

following:

> As currently structured, FOIA provides to any person a broad right of access to
> declassified Intelligence Community records, whatever the purpose of his or her
> request.  As a result, foreign persons and governments (including those that may
> support or participate in terrorist activities) have generated requests that require a
> significant commitment of Intelligence Community resources to process. CIA
> estimates that requests from foreign governments and foreign nationals comprise
> approximately 10 percent of the FOIA requests received annually based on the
> last three years.  From FY 1999 through FY 2001, these foreign government
> FOIA requests increased at the rate of one percent per annum.  Elements of the
> Intelligence Community are required by law to process these requests without
> regard to the nationality of the individual making the request.  Because elements
> of the Intelligence Community routinely handle classified national security
> information, the resources required to perform the painstaking, line-by-line

---

[1]   The term "intelligence community" is defined with reference to the National Security Act of
1947, which lists, among others, the Office of the Director of National Intelligence, the CIA, the
NSA, the DIA, intelligence elements of the FBI, the Bureau of Intelligence and Research of the
Department of State, elements of the DHS concerned with the analysis of intelligence
information, elements of the DOD that collect national intelligence, and others.  40 U.S.C. §
401a(4)(A)-(L).  The defendants move to dismiss the plaintiffs' claims in part only inasmuch as
the plaintiffs filed FOIA requests with members of the "intelligence community."  Defs.' Mot. to
Dismiss at 2.

> reviews necessary to ensure the proper protection of such classified information
> are substantial.  This section will prevent the diversion of the Intelligence
> Community's limited declassification resources for this purpose.

H.R. Rep. No. 107-592, at 29 (2002).

The central dispute in this matter is whether or not the plaintiffs fall within the foreign government entity exception.  To the court's knowledge, no court has yet had occasion to adjudicate the metes and bounds of FOIA's foreign government exception.  Thus untethered by precedent, this court turns to the statutory interpretation of § 552(a)(3)(E) as a matter of first impression.

### 2.  The Terms "Government Entity" and "Representative" Are Construed According to their Plain Meaning, Not According to English Law

Section 552(a)(3)'s foreign government entity exception states that records shall not be disclosed to any foreign "government entity" or its "representative."  5 U.S.C. § 552(a)(3)(E)(i)-(ii).  The plaintiffs argue that the terms "government entity" and "representative" are terms of art that should be understood with reference to English law.  Pls.' Mot. at 22-23.  Under English law, the plaintiffs argue, the term "government" refers only to the executive branch.  *Id.*  The plaintiffs thus maintain that Parliament is not a part of the "government."  *Id.* at 14.  Instead, they argue that the English government is formed by the political party that has last won a majority of seats in the House of Commons.  *Id.* at 14-15.  The leader of this party is invited by the Queen to serve as Prime Minister, and that individual selects a number of individuals to serve in ministerial offices (which are akin to U.S. cabinet positions).  Because none of the plaintiffs have ever served in this capacity, the plaintiffs conclude that FOIA's foreign government entity exception does not apply.

In response, the defendants maintain that the meaning of the terms "government entity" and "representative" must be construed with reference to the ordinary, common meaning of the statutory text. Defs.' Mot. at 7. They deny that § 552's text incorporates all the "nuances and intricacies" of the U.K.'s constitutional system. *Id.* Rather, they contend that the term "government" may mean "any political organ exercising any type or shade of political authority (whether executive, legislative or judicial) at any level." *Id.* The defendants thus maintain that under any plain-meaning analysis, the plaintiffs are encompassed by the foreign government entity exception. *Id.*

The court begins its inquiry with the axiom that statutory interpretation begins with the plain language of the statute itself. *Wall v. Kholi*, 131 S.Ct. 1278, 1284 (2011) (holding that statutory words must be given their "ordinary, contemporary meaning"); *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (noting that courts "should always turn to a cardinal canon before all others" – namely, that "a legislature says in a statute what it means and means in a statute what it says there"). Accordingly, the court declines the plaintiffs' invitation to interpret FOIA (an American statute) solely with reference to foreign law. The court freely admits that the word "government" may portend a more nuanced meaning within the milieu of the English system of governance. It would be decidedly peculiar to assume that Congress intended FOIA's terms to shift with the idiosyncratic governmental configurations of every sovereign state. Thus, the court rejects the plaintiffs' invitation to construe FOIA under English law and instead turns to the relevant question: whether or not the plaintiffs fall within § 552's plain, ordinary meaning.

### 3.  The U.K. Parliament is a "Government Entity"

The plaintiffs argue that Parliament is not a component of England's "government" as it is defined in English law.  Pls.' Mot. at 22-23.  The defendants counter that Parliament falls within the plain, ordinary meaning of a "government entity."  Defs.' Mot. at 7.

"Government" is ably defined by Black's Law Dictionary as "[a]n organization through which a body of people exercises political authority" or "the machinery by which sovereign power is expressed."  BLACK'S LAW DICTIONARY 764 (9th ed. 2009).  Government may also refer collectively to "the political organs of a country regardless of their function or level, and regardless of the subject matter they deal with."  *Id.*

In the English system of governance, legislation is enacted by Parliament; following the doctrine of Parliamentary sovereignty, legislation is binding and can be set aside by no political body other than Parliament itself.  Pls.' Mot. at 13.  Accordingly, Parliament is the primary organ tasked with the expression of sovereign political authority and its enactment into law.[2]  *Id.*  The court therefore concludes that Parliament is a foreign "government entity" for the purposes of FOIA.

Even if the plaintiffs' narrower definition of "government" were adopted, the plaintiffs gloss over the extent to which Parliament is integral to the U.K.'s "government."  The U.K.'s Executive Branch is elected by members of Parliament.  Pls.' Mot. at 15.  In addition, members of the Executive Branch are held accountable to Parliament by means of questioning and inquiry.  *Id.*  Moreover, Parliament may dissolve the Executive branch with a vote of no confidence.  *Id.*,

---

[2]     The English system therefore differs from the American system, in which courts may strike down legislative acts that are incongruent with the U.S. Constitution.  *See generally* Lord Irvine of Lairg, *Sovereignty in Comparative Perspective: Constitutionalism in Britain and America*, 76 N.Y.U. LAW REVIEW 1 (2001).

Ex. 3 at 8.  No further exploration of the matter is needed for the court to conclude that

Parliament, the primary lawmaking organ of the United Kingdom, is "[a]n organization through

which a body of people exercises political authority."  *See* BLACK'S LAW DICTIONARY 764 (9th

ed. 2009).  Accordingly, the court concludes that FOIA's foreign government exemption applies

to Parliament.


### 4.  Andrew Tyrie is a "Representative" of the U.K. Parliament

The plaintiffs argue that Andre Tyrie is not a representative of a foreign government

simply by virtue of his status as a Member of Parliament.  Pls.' Mot. at 27.  Rather, the plaintiffs

maintain that Andrew Tyrie only represents those individual constituents that he represents as an

elected member of the House of Commons.  *Id.*  The plaintiffs couch their argument in terms

reminiscent of the law of agency; namely, they argue that Andrew Tyrie can only be considered

a "representative" of the government if he wields the power to speak or act on the government's

behalf.  *Id.*

The defendants maintain that the plaintiffs' construction of the term "representative" is

impermissibly narrow.  Defs.' Mot. at 8-9.  They contend that a "representative" is not limited to

individuals who may bind or control the government's actions.  *Id.* at 9.  Instead, they argue that

a "member of a foreign legislative body" comfortably falls within FOIA's foreign government

entity exemption.  *Id.*

The court observes that the term "representative" is not synonymous with "agent" for the

purposes of § 552.  FOIA's foreign government entity exception uses the word "representative,"

not "agent," and when Congress uses different words a court must assume that the difference was

intentional.  *Burlington N. & Santa Fe. Ry. v. White*, 548 U.S. 53, 62-63 (2006).

10

In a democratically elected legislature, it is rarely possible that one individual speaks with the power to bind all of the government's other constituent parts.  Rather, the court observes that a Member of Parliament wields the levers of power that are exclusive to the government, including the power to vote on legislation, to craft laws and to hold the Executive Branch accountable for its actions.  Pls.' Mot., Ex. 3.  The fact that no individual wields these powers *exclusively* is merely a feature of the democratic system.  Andrew Tyrie, as a feature of his office, wields the power to act with the government's imprimatur.  The court therefore concludes that Andrew Tyrie is a "representative" of Parliament for the purposes of FOIA.  Accordingly, the court concludes that his FOIA claim falls within the foreign government entity exception.

### 5.  The APPG is a Subdivision of a Foreign Government Entity

The plaintiffs claim that the APPG is not a subdivision of a foreign "government entity" because it does not have the authority to act or speak on behalf of the U.K. Government.  Pls.' Mot. at 24.  Rather, they argue that the APPG merely exists to make inquiries of and to challenge the policies adopted by the U.K. Government.  *Id.*  In contrast, the defendants argue that the APPG is an organization whose membership is drawn exclusively from Parliament.  Defs.' Mot. at 10.  As such, they argue that the APPG is a "subdivision" of one or more foreign government entities, *i.e.*, Parliament, the House of Commons and/or the House of Lords.  *Id.*

Congress deliberately drafted the foreign government entity provision in broad strokes. *See* 5 U.S.C. § 552(a)(3)(E)(ii).  Specifically, the provision exempts from disclosures those requests made by "*any* government entity" that falls outside the United States.  *Id.* (emphasis added).  APPG's members are elected officials who serve in the House of Commons or the House of Lords.  Pls.' Mot. at 16.  Because the group's membership consists exclusively of

11

public officials, the court concludes that the APPG is a "subdivision" of a foreign "government entity" within the language of § 552(a)(3)(E).

### 6.  The Court Rejects the Plaintiffs' Proposed "Official/Individual Capacity" Distinction Because It Does Not Appear in the Statute

The plaintiffs claim that they filed their FOIA request not within their official capacity as public officials, but in their capacity as individuals (or in the case of the APPG, in its capacity as an independent organization).  Pls.' Mot. at 18.  The plaintiffs thus contend that the foreign government entity exception only applies if a FOIA request is made "on behalf of and under the authority of" a foreign government.  *Id.* at 21.  The defendants argue in response that allowing government officials to sue in their "individual capacity" would effectively render the FOIA's foreign government entity exception a dead letter.  Defs.' Opp'n at 14.

As noted, FOIA's governmental entity exception categorically bars certain groups of people or organizations from filing FOIA requests.  5 U.S.C. § 552(a)(3)(E).  This provision makes no reference to whether or not these groups are acting at the behest of, or whether their interests are aligned with, the official policy of their government.  *Id.*  In an effort to sidestep this blanket provision, the plaintiffs ask the court to introduce a distinction based on the requester's "official capacity" or "individual capacity."  The court is not at liberty, however, to amend the statute by inserting phrases that appear nowhere in the statutory language.  *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1267 (2011) (noting that courts should refrain from "taking a red pen to the statute" by "cutting out some words and pasting in others") (quotation marks and citation omitted).

12

It would be particularly inappropriate for the court to adopt the plaintiffs' suggestion because their proposed exception would, without doubt, swallow the rule.  The defendants describe the portentous consequences of the plaintiffs' argument if drawn to its logical extreme: recently deceased North Korean dictator Kim Jong Il, despite his status as the Supreme Leader of the Democratic People's Republic of North Korea, would have been able to file a FOIA request as long as he claimed to do so in his "individual capacity."  Defs.' Opp'n at 14 n.9.  It is not necessary to follow the defendants' parade of horribles to its furthest reaches, however.  Instead, the court observes that a statute susceptible of either of two opposed interpretations must be read in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen.  *Shapiro v. United States*, 335 U.S. 1, 31 (1948); *see also Rosado v. Wyman*, 397 U.S. 397, 415 (1970) (observing a "basic axiom – that courts should construe all legislative enactments to give them some meaning").  If the court is to give any meaning to the foreign government entity exception, this provision cannot turn on such evanescent factors as the subjective intent of the individual who files the claim.  To do so would essentially allow a system of voluntary compliance – which is to say, no compliance at all.  Accordingly, the court rejects the contention that the plaintiffs may evade the foreign government entity exception by filing in their "individual capacity."

### 7. Joe Cyr is Andrew Tyrie's Representative

The government contends that Joe Cyr is the "representative" of Andrew Tyrie and the APPG.  Defs.' Mot. at 2.  The plaintiffs counter that Joe Cyr is an American citizen and that his FOIA request is motivated solely by his concern about the policy choices of his country.  Pls.' Mot. at 31-32.

13

Under any plain-meaning analysis, an attorney is a "representative" of her client.  Several federal statutes define an attorney as a "representative."  *See, e.g.*, 5 U.S.C. § 7513(b)(3) ("An employee against whom an action is proposed is entitled to be represented by an attorney or other representative."); 45 U.S.C. § 153 ("Parties may be heard either in person, by counsel, or by other representatives"); 18 U.S.C. § 4214(c) ("the alleged parole violator . . . shall have counsel or another representative . . . ."); 5 U.S.C. § 7114(a)(5) ("The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude an employee from (A) being represented by an attorney or other representative, other than the exclusive representative, of the employee's own choosing in any grievance or appeal action").  It is possible that the members of Congress who enacted the foreign government entity exception may have wished a different definition of "representative" to apply for the purposes of FOIA; if so, they neglected to write it into the statute.

The plaintiffs maintain that Joe Cyr should nonetheless be allowed to proceed with his FOIA claim because he is a concerned United States citizen who acted independently of his status as the other plaintiffs' attorney.  Pl.'s Mot. at 31-32.  The court agrees that Joe Cyr, had he filed alone, would presumptively be entitled to disclosure under FOIA.  FOIA generally allows "any person" to seek disclosure of certain agency materials.  5 U.S.C. § 552(a)(3)(A); *Taylor v. Sturgell*, 533 U.S. 880, 885 (2008) (noting that "any person" may request a record unless the materials fall within one of FOIA's enumerated exceptions).  The foreign government entity exception states, however, that an agency "shall not" make any disclosures if the requester is a representative of a foreign government entity.  *Id.* § 552(a)(3)(E)(ii).  In conjunction, these two provisions may fairly be read as follows: *any person* can file a FOIA request *unless* that person is also a foreign government entity or acts as its representative.  5 U.S.C. § 552(a)(3)(A), (E).

14

Because Andrew Tyrie is a representative of a foreign government entity, his request is barred by FOIA.  Because Joe Cyr is Andrew Tyrie's legal representative, Cyr's request is similarly barred.

The court will admit that the result is somewhat inelegant.  In particular, it seems clear that the plaintiffs could have easily circumvented this legal snarl; information disclosed under FOIA is freely available to the public at large.  *See Bassiouni v. Cent. Intelligence Agency*, 392 F.3d 244, 245-46 (7th Cir. 2004).  It therefore appears that Joe Cyr could have filed an identical FOIA request and then forwarded the information along to the remaining plaintiffs.  *See id.*; *Swan*, 96 F.3d at 500 ("Once records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else.").  The court is not authorized to follow the logic of the policy it would enact if it could rewrite the law from scratch, however.  Instead, the court is required to follow the logic of the statute as it is written.  Here, Congress appears to have been motivated by a desire to reduce the administrative burdens shouldered by this country's intelligence agencies.  H.R. Rep. No. 107-592, at 29 (2002).  Congress chose to exclude certain groups from filing FOIA requests, even if those groups can later receive the information disclosed by other individuals' FOIA requests.  *See id.*; *Swan*, 96 F.3d at 500.  Although this is not the only method to reduce the administrative burden faced by the country's intelligence agencies, it is the way Congress chose to do so.  The court has no opportunity to second-guess Congress' choice.  Accordingly, the court concludes that the plaintiffs' claim fails to state a ground upon which legal relief may be granted.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' partial motion to dismiss and denies the plaintiffs' motion for partial summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of April, 2012.


RICARDO M. URBINA
United States District Judge