UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 2 9 2015

Clerk, U.S. District and
Bankruptcy Courts

————————————————————— )
ALL PARTY PARLIAMENTARY GROUP      )
ON EXTRAORDINARY RENDITION et al., )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )      Civil Action No. 09-2375 (PLF)
                                   )
U.S. DEPARTMENT OF DEFENSE et al., )
                                   )
          Defendants.              )
————————————————————— )

OPINION AND ORDER

Plaintiffs, an elected member of the U.K. Parliament, a parliamentary group, and

an American attorney, brought this suit pursuant to the Freedom of Information Act ("FOIA")

against various government agencies, including the United States Department of Defense.

Plaintiffs have requested documents related to (1) the United States' extraordinary rendition

program, and (2) intelligence operations concerning certain terrorist suspects held by the United

States. The National Security Agency ("NSA"), a separate agency within the Department of

Defense, and the plaintiffs have cross-moved for summary judgment. After careful consideration

of the parties' papers, the attached declarations and exhibits, the relevant legal authorities, and

the oral arguments presented by counsel on August 18, 2015, the Court will grant the NSA's

motion for partial summary judgment and deny the plaintiffs' cross-motion.[1]

_____

[1]        The papers reviewed in connection with the pending motions include the
following: plaintiffs' complaint ("Compl.") [Dkt. No. 1]; defendants' motion for partial summary
judgment as to the NSA ("Def. Mot.") [Dkt. No. 74]; declaration of David J. Sherman in support
of defendants' motion for partial summary judgment ("Sherman Decl.") [Dkt. No. 74-1];
defendants' statement of material facts as to which there is no genuine issue ("Def. Statement")

## I. BACKGROUND

Plaintiffs seek records responsive to 43 FOIA requests submitted to defendants. Roughly half of plaintiffs' requests, Nos. 1-18, 21-34, 41 (in part), and 43 (collectively "Group 1 Requests"), concern the United States' extraordinary rendition program. Compl. Ex. A (FOIA Request) at 7-11. Specifically, plaintiffs seeks records relating to communications between the United States and foreign governments about extraordinary rendition and secret detention, names of detainees, information about where detainees were held and transported, details about the detention of Khalid Sheikh Mohammed, Abu Zubaydah, and Abd al-Rahim al Nashiri, and intelligence information gathered from the interrogation of these individuals. Id.

The remaining half of plaintiffs' requests, Nos. 19-20, 35-40, 41 (in part), and 42 (collectively "Group 2 Requests"), relate to documents regarding certain terrorist suspects detained by the United States. Compl. Ex. A (FOIA Request) at 7-11. Specifically, the requests seek documents concerning communications between the U.K., the United States, or any foreign government about Abu Qatada between September 2001 and November 1, 2002, Abu Qatada's locations during that period, names of individuals detained by other countries, intelligence gathered about specific terrorist plots and the sources for this intelligence, and the sources of intelligence used to arrest and detain Khalid Sheikh Mohammed, Abu Zubaydah, and Abd al-Rahim al-Nashiri. Id.

---

[Dkt. No. 74]; plaintiffs' opposition to defendants' motion for summary judgment and cross-motion for partial summary judgment ("Pl. Opp. and Mot.") [Dkt. No. 75]; declaration of Adam R. Feeney in support of plaintiffs' opposition and cross-motion ("Feeney Decl.") [Dkt. No. 75-1]; plaintiffs' statement of genuine issues of material fact ("Pl. Statement") [Dkt. No. 75-16]; defendants' reply in support of their motion for partial summary judgment and opposition to plaintiffs' cross-motion ("Def. Reply and Opp.") [Dkt. No. 78]; and plaintiffs' reply in support of their cross-motion for partial summary judgment ("Pl. Reply") [Dkt. No. 80].

## II. LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); see also Sack v. U.S. Dep't of Defense, 6 F. Supp. 3d 78, 85 (D.D.C. 2013). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" Students Against Genocide v. U.S. Dep't of State, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

To establish that its search for responsive records was adequate, an agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (noting an agency's FOIA obligations are fulfilled "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents'"). A search need not be exhaustive, Saldana v. FBI, 715 F. Supp. 2d 24, 26 (D.D.C. 2010), and an agency's failure to find a particular document does not undermine the determination that the search was adequate. Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004); Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 892 n.7

(D.C. Cir. 1995). The adequacy of a search therefore is not determined by its results, but by the method of the search itself, Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Saldana v. FBI, 715 F. Supp. 2d at 25-26, and a court is guided in this determination by principles of reasonableness. Oglesby v. U.S. Dep't of the Army, 920 F.2d at 68.

An agency can satisfy its burden with supporting affidavits or declarations if they are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d at 514; Sack v. U.S. Dep't of Defense, 6 F. Supp. 3d at 85. Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Lasko v. U.S. Dep't of Justice, 684 F. Supp. 2d 120, 127 (D.D.C. 2010) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d at 1200).

## III. DISCUSSION

The NSA asserts that it is entitled to summary judgment because (1) no search is required for the Group 1 Requests because the NSA is unlikely to possess responsive documents; and (2) the Group 2 Requests seek material protected by Exemptions 1 and 3 of the FOIA and the NSA therefore need neither confirm nor deny the existence of responsive records. Def. Mot. at 10-17.

*A. Group 1 Requests*

The role of the NSA is to "[c]ollect (including through clandestine means),

process, analyze, produce, and disseminate signals intelligence information and data for foreign

intelligence and counterintelligence purposes to support national and departmental missions."

Exec. Order No. 13,470, Further Amendments to Exec. Order No. 12,333, 73 Fed. Reg. 45,325,

45,334 (July 30, 2008); see also Sherman Decl. ¶ 5 ("NSA's cryptologic duties have two primary

missions: (1) to collect, process, analyze, produce and disseminate signals intelligence (SIGINT)

information for foreign intelligence and counterintelligence purposes to provide support for

national and departmental requirements and for the conduct of military operations; and (2) to

conduct information assurance activities."). The Group 1 Requests, however, relate only to

human intelligence activities. See Compl. Ex. A (FOIA Request) at 7-11. The NSA thus argues

that, because its function is limited solely to signals intelligence, it is unlikely to possess any

documents responsive to the Group 1 Requests and is not required to search its records. See

Sherman Decl. ¶ 6 ("The collection of HUMINT – that is, intelligence derived from human

sources as opposed to signals – falls outside of NSA's authorities."); Def. Mot. at 10-12.[2] The

Court agrees and concludes that a search for the documents requested would be futile; the NSA

has satisfied its burden to conduct an adequate search. See Reyes v. EPA, 991 F. Supp. 2d 20,

27 (D.D.C. 2014) ("Where . . . the Government's declarations establish that a search would be

futile . . . the reasonable search required by FOIA may be no search at all.") (quoting Amnesty

---

[2]      Signals intelligence is "the interception and decoding of foreign electronic
communications," while human intelligence concerns "the collection of intelligence information
from human sources." MICHAEL A. TURNER, HISTORICAL DICTIONARY OF UNITED STATES
INTELLIGENCE 234 (2d ed. 2014).

Int'l USA v. CIA, 2008 WL 2519908, at *11 (S.D.N.Y. 2008)); Judicial Watch, Inc. v. U.S.

Dep't of Homeland Sec., 857 F. Supp. 2d 129, 145 (D.D.C. 2012) ("the FOIA does not obligate

agencies to undertake fishing expeditions in offices that are not reasonably likely to possess

responsive records").   Summary judgment therefore is appropriate as to the Group 1 Requests.

      Plaintiffs argue that the NSA's functions are much broader than it lets on.  Pl.

Opp. and Mot. at 14-16.  Plaintiffs speculate that, because the NSA is a "key player in the war on

terror," the NSA must be receiving human intelligence information from other intelligence

agencies that is responsive to plaintiffs' Group 1 Requests.  Id. at 15-16.  Although plaintiffs'

claims may be plausible, the NSA's declaration, filed under pain of perjury, is accorded a

presumption of good faith and "cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents."  Lasko v. U.S. Dept. of Justice, 684 F. Supp.

2d at 127 (D.D.C. 2010) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d at 1200).

## B. Group 2 Requests

      As to the Group 2 Requests, the NSA asserts that it can neither confirm nor deny

the existence of responsive material because the requests fall within FOIA Exemptions 1 and 3.

5 U.S.C. § 552(b)(1) and (3); Def. Mot. at 12-17.  This response is commonly referred to as a

"Glomar response."  See Phillippi v. CIA, 546 F.2d 1009, 1010-11 (D.C. Cir. 1976) (addressing

the CIA's refusal to confirm or deny whether it had documents concerning its relationship with

the Hughes Glomar Explorer, which was a 'large vessel publicly listed as a [privately owned]

research ship.').  An agency's Glomar response is proper if confirming or denying the existence

of responsive records "would itself 'cause harm cognizable under an FOIA exception.'"  Am.

Civil Liberties Union v. CIA, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting Roth v. U.S. Dep't of

Justice, 642 F.3d 1161, 1178 (D.C. Cir. 2011)).  A <u>Glomar</u> response is valid, and an agency

therefore is entitled to summary judgment, "if the fact of the existence or nonexistence of agency

records falls within a FOIA exemption."  <u>People for the Ethical Treatment of Animals v.</u>

<u>National Institutes of Health</u>, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting <u>Wolf v. CIA</u>, 473 F.3d

370, 374 (D.C. Cir. 2007)).

      An agency may not rely on a <u>Glomar</u> response, however, if the plaintiff

demonstrates that the fact of the existence, or nonexistence, of the sought-after records has been

"officially acknowledged," <u>see</u> <u>Am. Civil Liberties Union v. CIA</u>, 710 F.3d at 426-27, or is in the

public domain.  <u>Marino v. DEA</u>, 685 F.3d 1076, 1081 (D.C. Cir. 2012).  Thus, a plaintiff "can

overcome a <u>Glomar</u> response by showing that the agency has already disclosed the fact of the

existence (or nonexistence) of responsive records, since that is the purportedly exempt

information that a <u>Glomar</u> response is designed to protect."  <u>Am. Civil Liberties Union v. CIA</u>,

710 F.3d at 427.

      Under Exemption 1, the disclosure provisions of the FOIA do not apply to matters

that are "(A) specifically authorized under criteria established by an Executive order to be kept

secret in the interest of national defense or foreign policy and (B) are in fact properly classified

pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  As the court of appeals has noted, "the

text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible

assertion that information is properly classified."  <u>Morley v. CIA</u>, 508 F.3d 1108, 1124 (D.C.

Cir. 2007).  In its declaration, the NSA explains that acknowledging the existence or

nonexistence of documents responsive to the Group 2 Requests would disclose information

(1) that is currently and properly classified pursuant to Executive Order 13,526 — "NSA

capabilities, activities and intelligence priorities" — and (2) that "reasonably could be expected to cause exceptionally grave damage to the national security." Sherman Decl. ¶ 24; see also id. ¶¶ 25-27, 37.[3] The NSA therefore has carried its burden to show that FOIA Exemption 1 applies. See Larson v. Dep't of State, 565 F.3d 857, 863 (D.C. Cir. 2009); see also Center for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003) (courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record") (quoting McGehee v. Casey, 718 F.2d 1137, 1148 (D.C. Cir. 1983)).

The NSA also is entitled to summary judgment under FOIA Exemption 3. Exemption 3 protects matters "specifically exempted from disclosure by statute," provided that such statute leaves no discretion on disclosure or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).  Under that exemption, the NSA "need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute." Larson v. Dep't of State, 565 F.3d at 865 (citing Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990)).  The statute claimed by the NSA plainly qualifies: 50 U.S.C. § 3605(a) provides that no

---

[3]       Executive Order 13,526 "prescribes a uniform system for classifying, safeguarding, and declassifying national security information" and recognizes that "throughout our history, the national defense has required that certain information be maintained in confidence in order to protect our citizens, our democratic institutions, our homeland security, and our interactions with foreign nations." Exec. Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).

law "shall be construed to require the disclosure of the organization or any function of the
National Security Agency, or any information with respect to the activities thereof." See Larson
v. U.S. Dep't of State, 565 F.3d at 868 ("[Section 3605] qualifies as an Exemption 3 statute");
see also 50 U.S.C. § 3024(i)(1) (the Director of National Intelligence, the head of the Intelligence
Community, is required to "protect intelligence sources and methods from unauthorized
disclosure"); 18 U.S.C. § 798(a)(3) (making it a crime to "knowingly and willfully" furnish or
publish "any classified information . . . concerning the communication intelligence activities of
the United States"). Because the Group 2 Requests seek records relating to the NSA's functions
and activities, the NSA's Glomar response also is valid under Exemption 3 and the agency is
entitled to summary judgment.

    Plaintiffs counter that the requests "will not reveal anything not already known"
because "American newspapers have published reams of material about NSA documents leaked
by the now notorious Edward Snowden, a former NSA contractor." Pl. Opp. and Mot. at 2,
17-21. These leaks, plaintiffs argue, led to numerous Foreign Intelligence Surveillance Court
orders and decisions being declassified, which reveal NSA signals intelligence functions and
activities. Id. at 7. Under the precedents of the D.C. Circuit, in order to succeed on this
argument, plaintiffs must show that the information requested already was "made public through
an official and documented disclosure," that "the information requested [is] as specific as the
information previously released," and that "the information requested [] match[es] the
information previously disclosed." Fitzgibbon v. CIA, 911 F.2d at 765; see Wolf v. CIA, 473
F.3d at 378-79 ("a plaintiff asserting a claim of prior disclosure must bear the initial burden of
pointing to specific information in the public domain that appears to duplicate that being

withheld"). Leaked information and documents, like those identified by plaintiffs, do not constitute official acknowledgment. See Judicial Watch, Inc. v. Dep't of Justice, 898 F. Supp. 2d 93, 108 (D.D.C. 2012) ("Obviously, to qualify as an official acknowledgement, the acknowledgement must be 'official,' *i.e.*, authorized or approved by the agency in possession of the information being acknowledged."). Moreover, the declassified documents identified by plaintiffs are limited, describe the NSA's activities in general terms, and do not concern the specific activities, investigations, and detentions detailed in plaintiffs' FOIA requests. Pl. Opp. and Mot. at 6-12; id. Ex. K (Redacted FISA Court Orders and Decisions). Plaintiffs thus have failed to meet the substantial burden the law places upon them. See Public Citizen v. Dep't of State, 11 F.3d 198, 203 (D.C. Cir. 1993) (describing the prior disclosure test as "a high hurdle for a FOIA plaintiff to clear").

## IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that defendants' motion for partial summary judgment as to the National Security Agency [Dkt. No. 74] is GRANTED; it is

FURTHER ORDERED that plaintiffs' cross-motion for partial summary judgment [Dkt. No. 76] is DENIED; and it is

FURTHER ORDERED that judgment is entered for defendant Department of Defense, as to the National Security Agency only.

SO ORDERED.


DATE: 9|29|15

PAUL L. FRIEDMAN
United States District Judge